Good morning Judge Arnold, Judge Graves, and Chief Judge Cole. My name is Derek Humphrey and I'm here representing John Daniels on his appeal of a conviction for tax evasion. I reserve three minutes for rebuttal. That's fine and you may proceed. This is an unusual tax evasion case. There are really two issues that I came to talk to you all about today. If there are other things that the court wants to talk about, of course, I'll go with those. But the main two issues I want to talk about is the sufficiency of the evidence, which is the first argument in our brief, and the sentencing issue, which is the last argument in our brief. With regard to the sufficiency of the evidence, Mr. Daniels was indicted for tax evasion based on three affirmative acts. According to the indictment, it was that Daniels requested payments directly from his office manager, that Daniels maintained false business records, and that Daniels provided false business records to his CPA. I'm going to take these in reverse order because really the government's case is built on a somewhat shaky foundation. That's why we don't think the evidence was sufficient. If you look at what Daniels provided to his CPA, he provided his QuickBooks computer program. How he input information into his QuickBooks program is that he took his checking account statements, or his bank statements from Central Kentucky Wellness Center, and input information into QuickBooks. QuickBooks then generates what's called the trial balance, profit and loss, and general ledger statements. In what Special Agent Volk testified to at trial, if Daniels did this and the bank accounts were correct, then the government wouldn't have a problem with what he did as far as turning those documents over to his CPA. That's okay. If Daniels knew that the checking account statements were incorrect, that's where the problem comes in. That would be an affirmative act. If he didn't know that, that can't be an affirmative act that he committed to convicting for tax evasion. So this doesn't, I mean, you're setting aside, I guess, one of the things you're going to address in the other part, and that is the money that was taken out and not accounted for in the checkbook. Because obviously if you put garbage in, you get garbage out, right? I'm getting there. Okay, we're going to get there. There we go. The second part, and like I said, I'm going backwards here, is that Daniels maintained false business records. Well, again, if Daniels didn't have knowledge that money was being taken out of that cash box. Here's my basic struggle with that argument. Let's say he didn't know that Whitten was taking money out specifically. Let's just assume your position. He does know that some money comes out because he's asked his employees to keep a log of it. And then he knows that more money is being deposited into his personal account. How can he not have engaged in an affirmative act when business money that should have gone into the business account shows up in his personal account? I don't understand how he doesn't know that he's getting the money when he thinks he's put X dollars in his account. And when he opens it up, he's got a whole lot more. The way I would answer that is the government didn't present any evidence of his other bank accounts. There's no evidence. But they presented evidence from Whitten that she put money into his account. They don't have to show you his account. They have her testimony. So we know that extra money went into his account. Actually, we know the dollar value of it on a yearly basis. So how do you explain his not questioning $47,000 that showed up in his personal account instead of his business account? I guess the way I would answer that is Mr. Daniels had other businesses. And the money from other businesses or the money that Whitten was giving him, I don't guess he ever questioned where that money came from. He didn't understand. If he was running other businesses that Whitten wasn't involved in, he would know what he put in his personal account. Correct. All right. So how does he account for the money that Whitten puts into his personal account? Based on the evidence presented at trial, those topics weren't really addressed. Daniels never testified in this case. What Whitten testified to is that she was taking money to give to him or putting it in his business account or putting it in his checking account. Now, she was handling... His personal account. I mean, that was her testimony. He got unhappy because he bounced a check or something over the weekend,  And, you know, you may not like that, but I think that works against your sufficiency of the evidence argument. Because I think you'd have to say, on his part, willful blindness, which doesn't help him at all. I don't think the tooth fairy is an option here. So I think we've got a problem. The way I would explain it is that Whitten, what she testified to, is that she gave him cash or put money in one of his accounts. He didn't necessarily know where that money came from. It was money that she... I guess my problem is we're on a sufficiency of the evidence standard. You get to draw reasonable inferences from circumstantial evidence. She testified, I didn't put money into the business account. Because he was overdrawn in his personal account, I began to put it in his personal account. I don't know how a reasonable juror could not consider that inferentially, the deposit of money that did not go into his account, that he must have known of. I mean, if he's overdrawn one week and he's got a whole lot of money the next, the practical reality is somebody put it in. I agree. My thought on that would be she was putting in incremental amounts. She wasn't putting in a whole $40,000. I mean, eventually... Well, over time. Over time it wound up that much. But does the significance of the amount control this standard of review, or does the fact that he was getting regular additions to his account from his business, not running through his business, doesn't that just carry the day against a sufficiency of the evidence argument? Well, I guess my response would be that Daniels didn't know if she was taking money from the business account and putting it in his checking account, or if she was taking... Let me rephrase that. Daniels didn't know if Whitten was taking money from the Central Kentucky Wellness Center's business account and putting it in the checking account, or taking money from Central Kentucky Wellness Center's account and giving him cash from that account. But is it your position that because the incremental amounts were sufficiently small, that wouldn't have been enough to put him on inquiry notice? That's a point I'm trying to make here, is he wouldn't know to inquire about that. About $47,000. Wow. If that went into my account, I wouldn't notice it. But incrementally is the problem here. Incrementally it went in. It didn't go in as a... Well, I guess my problem, Counselor, is the whole thing began because he was overdrawn. And she realized he was very unhappy about being overdrawn. So he's got to know pretty closely what's kept in his account if he's overdrawn. And she then deposits it so he won't be overdrawn again. What reasonable juror could not presume that he would notice that difference? I guess a reasonable juror could presume that... Isn't that the standard? If a reasonable juror presumes that it came improperly, then you don't have a sufficiency of the evidence problem, do you? I agree. It's a reasonable juror standard. A reasonable juror, though, could have thought that Daniel's money was coming from... The money that was appearing in his checking account was coming from his business account. That's what I'm saying, is that... I think the standard doesn't ask could a reasonable juror agree. I think the standard is that you have to exclude all of that evidence in order to get to a sufficiency of the evidence problem. Yes, I agree. And I think what the situation is here is that the government never specifically asked Whitten, did you inform Daniels that you were taking money out of his cash box and putting it in these accounts? That was talked about and suggested, but it was never specifically asked. The closest they got was on trial day two, pages 555 and 556. The government asked a question by me, did there come a time shortly after the clinic opened that he, meaning the defendant, requested you as office manager start giving him pocket money from the money that was collected at the clinic? What was your answer? I said, yeah. So they never asked the question, well, did he know that you were taking money out of the cash box and giving it to them? Then why did he ask them to keep a log and record what they removed from the cash box if he didn't know money was coming out of the cash box? Well, I guess at some point, there's no testimony on this, but at some point what could have happened is he could have seen that there was some money not in the cash box that should have been, and he wanted to know about that. I don't know where you are in your argument, but I want you to talk about this misconduct that you say could not be included at the sentencing phase. On the sentencing argument? Yes. I'll move on to that pretty quickly. There are two guidelines we're talking about here. It's 2T1C1 and 2T1.1C2. Also, I want to reference 1B1.2, where offense is defined as an offensive conviction. The government would prefer to use the C2 guideline. We think C1 is the proper guideline, and if you read the definition of offense into this, it says if the offensive conviction involved tax evasion or a fraudulent or false return. Here, Daniels was convicted of tax evasion. He wasn't convicted of willful failure to file. The government dismissed the willful failure to file charge. The district court didn't find that the willful failure to file charge was criminal. We admitted Daniels failed to file his taxes, but there was never any proof or finding by the court that this was a criminal act. This willful failure to file was a criminal act. The court only found he didn't file his taxes. So you can't use the whole number, the $47,000 number. The only part you can use is what was in Ms. Whitten's notebook, the $9,000 number. And that reduces his face level to a 10 instead of a 12. I see that I'm out of time. Okay, you will have your full rebuttal. Thank you. Good morning. Good morning. May it please the court. Dimitri Slovin for the United States. I'll start with the sufficiency of the evidence argument. What Ms. Whitten said at trial is that she put the money wherever he told her to put it. What she said in the grand jury was he told her to give her cash. In both cases, what the jury saw was that Mr. Daniels knew that this money was being taken out of the cash box and that it was being given to him. And the amounts were certainly significant. This began with $500 a week. It went up to $1,500 a week, I believe, at its peak. That's a significant amount of money. Mr. Daniels, looking at his total taxes, this was a big chunk. In fact, it took his taxes in the second year, 2012, from being negative to getting a refund to owing taxes because his income was not very high. So this was a significant chunk of money. This was not money that could be missed, that could be misplaced. And the jury saw all of this. And the jury properly determined, and it was reasonable for them to conclude, that he knew that this was going on and that the reason it was happening is that he intended to evade paying the full share of taxes that he owed. Is there any evidence that would show that Daniels knew that there were these two sets of books? So the money's coming out of the cash box, and that's what Witten says, and apparently Daniels knew that. But is there evidence that shows that Daniels knew that this was off the books, that there was a second set of books that were being recorded by Witten, I think, that would show the $500 a week, then the $1,000 a week, the $1,500 a week? Yes. Ms. Witten testified that Daniels is the one who told her that any money that was taken out of the cash box needs to be written down. But written down in any specific place? I mean, it could be written down for purpose of inclusion in the receipts that go into the QuickBook calculation, I suppose. He did not say directly, here's a notebook, keep this notebook of the amounts. What he did say was any money that's taken out needs to be written down. And she did not keep the QuickBooks. Mr. Daniels himself kept the QuickBooks. So nobody else could put those entries into the books. Only he could. And he did not fulfill his responsibility of making sure that all the amounts that his business took in made it into the books. Whether that was because he was purposely asking to have the money withheld and knew from the beginning to the end what was going on, or because it was a hint-hint and willful blindness. Either way, he knew that this was going on. He knew that there was money being withheld, being given either to him in cash, as she testified in front of the grand jury, or being put into his personal bank account as Ms. Witten testified at trial. He knew that that was going on. He knew that these numbers were not going into the business bank account and therefore not going onto his QuickBooks. And he never attempted to reconcile those numbers with the QuickBooks numbers that he was giving to the CPA. On the sentencing issue, the key point is that regardless of which sentencing guideline that is used, and the district court held this and stated this in its sentencing, regardless of which guideline used, the base offense level is exactly the same. Because all the conduct comes in under 2T1.1. Your opposing counsel argues that the district court could only consider uncharged conduct if it violated the tax laws. Why is that incorrect? The district court found that there was a failure to file in this case, and that itself is a criminal act. The knowledge of the tax laws is part of the intent element for the affirmative act. So certainly if the jury found that that knowledge existed for the purpose of evasion, then that element would have also been there for the failure to file. What's the government's burden of proof? For the sentencing? For that sentencing assumption that his conduct violated the tax laws with the necessary intent. At sentencing, a judge only needs to find out by preponderance of the evidence. It's not beyond reasonable doubt. In fact, this court has held before that even conduct that a defendant was acquitted of by a jury could be considered at sentencing. The government conceded on the front end that the loss arising from the defendant's failure to file was not sufficient to convict. So it seems, and I understand the guidelines, but here you admit that there's not enough evidence there to convict, but you can still bring that in under this relevant conduct charge and add on to the sentence and basically sentence him as if he were convicted on that. And that seems problematic. I understand the guidelines, but with the government's concession, why isn't your adversary correct that this is inappropriate? First of all, we do not concede that. The reason that the failure to file charges were dismissed was because we erroneously charged the failure to file as occurring on April 15th when it actually occurred on October 15th when the extension expired. So the indictment did not match the actual dates of the conduct. That was the problem. So we dismissed that charge based on a technical reason, based on a problem with the indictment. But we could have proven that charge at trial. And all the evidence that the jury had certainly was enough to convict him on the failure to file charges as well. But even if we could not have, I think that the guideline clearly states that all conduct that is, unless it is clearly unrelated, comes in at sentencing. There are no further questions. And we're resting our briefs. Thank you. Okay. Mr. Humphley. Thank you, Your Honors. I'll touch more on the guidelines issue. The government in this case wants to have its cake and eat it too. They want to dismiss the willful failure to file charge and yet come around and have it play a part in a sentencing. That's not fair. Their argument, it was a variance argument, wasn't it? They dismissed that because there would have been a variance based on timing. Correct. So that's not necessarily an admission that they didn't have evidence to prove it. But failure to file by itself is not a crime. It has to be a willful failure to file. And the government never proved that. But even if we agree with you that it's not fair, it is permissible under the guidelines, wouldn't you agree, as he said? As long as it's related to. If it's a criminal, if his willful failure to file was criminal, then yes, it can be used. In the cases cited by the government, United States v. Meek and United States v. Josephsburg, there the defendants conceded that their failure to file was criminal in nature. Here we've never conceded that. We've never said, yes, his failure to file was criminal. We've contested that all the way. And like I said, I just read the district court's sentencing transcript two days ago. Nowhere in that sentencing transcript does he say, I find that Mr. Daniels is guilty of willful failure to file or I found that as a criminal act. He said he failed to file, therefore I'm including it. But you've got to have that criminal component before you can use that in sentencing. But the guidelines and the application notes seem to contemplate that if there's sort of the same course of conduct, relevant conduct, then it can be taken into account for purposes of sentencing. So I'm not sure how you get around that. I'd argue that in United States v. Daniel, I don't think there's any relation there, but in United States v. Daniel, the court held that there must be evidence of criminal behavior regarding the total tax liability. The tax loss must be a criminal deficiency, it's not civil liability. So there must be some type of finding that this is criminal, what he did was illegal. There was no proof at trial. They proved that he didn't file his taxes. We admit that. But they never proved his failure to file taxes was criminal. The jury... Well, I know you argue the spies or spies evil motive standard, but isn't the standard Pomponio, I think is the name of the case, that willfulness is a voluntary, intentional violation of a known legal duty? I don't think that there's any denial that there's a known legal duty to file your taxes. So if the evidence showed that he was voluntarily and intentionally did not file, doesn't that satisfy the standard of willfulness? I see my time is up. May I respond? Please. The way I would answer that is there are... If you're not... I don't want to say intentional. But the word I'm looking for is if you're negligent in failing to file taxes, if there's some excuse in failing to file taxes, if it's based on the advice of counsel or some other reason, then he potentially could not be found guilty for willful failure to file taxes. Okay. Counsel, we thank you for your arguments this morning. Thank you. The case will be submitted.